1 | JOSEPH W. COTCHETT (#36324)
  | NANCY L. FINEMAN (#124870)
2 | MARK C. MOLUMPHY (#168009)
  | PETER E. BORKON (#212596)
3 | COTCHETT, PITRE, SIMON & McCARTHY
  | 840 Malcolm Road, Suite 200
4 | Burlingame, CA 94010
  | Telephone: (650) 697-6000
5 | Fax: (650) 697-0577

6 | *Attorneys for the Plaintiffs and Class*

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| WILLIAM M. BENNETT and MICHELE L. BOROVAC, individually and on behalf of all those similarly situated, | ) ) ) | Case No. C 04 4848 MHP |
|---|---|---|
| | ) | CLASS ACTION |
| Plaintiffs, | ) ) | PRIVATE SECURITIES LITIGATION REFORM ACT |
| v. | ) | |
| | ) | COMPLAINT FOR VIOLATION OF: |
| H&R BLOCK FINANCIAL ADVISORS, INC., and Does 1-10, | ) ) ) | 1. Violations of Section 10(b) of the Securities Exchange Act of 1934, Rule 10b-5 |
| Defendants. | ) ) | |
| | | 2. Fraud and Concealment |
| | | 3. Breach of Fiduciary Duty |
| | | JURY TRIAL DEMANDED |

**COMPLAINT**

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. OVERVIEW | 1 |
| II. JURISDICTION, VENUE AND SAFE HARBOR | 2 |
| III. THE PARTIES | 3 |
|     A. Plaintiffs | 3 |
|     B. Defendant | 3 |
| IV. FACTUAL ALLEGATIONS | 4 |
| V. CLASS ALLEGATIONS | 8 |
| VI. CAUSES OF ACTION | 9 |
|     FIRST CAUSE OF ACTION (Violations of §10(b) of the 1934 Act and Rule 10b-5) | 9 |
|     SECOND CAUSE OF ACTION (Fraud and Concealment) | 10 |
|     THIRD CAUSE OF ACTION (Breach of Fiduciary Duty) | 11 |
| VII. PRAYER FOR RELIEF | 12 |
| JURY DEMAND | 12 |

Plaintiffs allege as follows upon information and belief based, *inter alia*, upon investigation conducted by plaintiffs and their counsel, except as to those allegations pertaining to plaintiffs personally, which are alleged upon knowledge:

## I. OVERVIEW

1. Plaintiffs bring this action on behalf of all persons and entities who purchased Enron corporate bonds from defendant H&R Block Financial Advisors, Inc. ("H&R Block") from October 29, 2001 through November 27, 2001 (the "Class Period") and suffered damages (the "Class"). Plaintiffs make these allegations based upon the investigation of their counsel, which included, among other things, a review of Enron's condition, public reports and documents pertaining to Enron, the investigation, press release and disciplinary complaint filed by the National Association of Securities Dealers ("NASD"), and discussions with consultants. Plaintiffs believe that substantial evidence exists for the allegations set forth in this Complaint.

2. During the one-month Class Period, a period immediately preceding the disastrous revelation of Enron's bankruptcy on December 2, 2001, H&R Block, through its registered representatives, engaged in a widespread effort to solicit and sell worthless Enron bonds to plaintiffs and other Class Members, *i.e.*, their own brokerage customers. H&R Block committed this fraud through uniform sales presentations, omitting material facts in connection with the offer and sale of the Enron bonds including the serious and significant risks associated with the bonds due to Enron's accounting and credit problems of which H&R Block was monitoring and well aware.

3. Equally troubling, H&R Block failed to disclose <u>internal</u> information about their own downgrading of Enron securities, as well as secret incentives to brokers, higher than the usual commissions, to dump the Enron bonds on unsuspecting clients, which information was only recently publicly revealed. Specifically, during the Class Period, and unbeknownst to plaintiffs and the Class members, defendant had internally removed an Enron security from its approved list because of concerns about, among other things, the company's debt ratings and the SEC investigation. Similarly, H&R Block created a secret incentive system whereby registered representatives earned special sales credits of between $10 and $17.50 per Enron bond sold to

1

**COMPLAINT**

1  Class members, more than double the typical commissions, in order to dump the Enron bonds as
2  quickly as possible.

3        4.     Soon after plaintiffs purchased the Enron bonds from defendant, Enron was forced
4  to file bankruptcy. Enron's auditor, defendant Andersen was found guilty of criminal violations
5  and has been forced out of business. One of Enron's officers, Michael Kopper, has pleaded
6  guilty to charges of money laundering and fraud. Andrew Fastow, former Chief Financial
7  Officer of Enron, was charged in a criminal complaint with violations of federal law, including
8  mail and wire fraud, and pleaded guilty to two conspiracy counts in January 2004. Two former
9  Enron CEOs, Kenneth Lay and Jeffrey Skilling, have since been charged with criminal fraud.

10        5.     Plaintiffs and Class members suffered massive and almost immediate damages, as
11  the prices of Enron bonds plunged after Enron filed for bankruptcy. By this action, plaintiffs
12  seek to recover damages for such fraud.

13  **II.     JURISDICTION, VENUE AND SAFE HARBOR**

14        6.     Plaintiffs bring this action pursuant to §10(b) of the Securities Exchange Act of
15  1934 and Rule 10b-5 promulgated thereunder, as well as common law claims. The Court has
16  jurisdiction over this action pursuant to §27 of the 1934 Act (15 U.S.C. §78aa), as well as
17  supplemental jurisdiction over common law claims.

18        7.     Venue is proper in this district. Defendant maintains several offices in this
19  district, including several offices in San Francisco, California. Plaintiffs purchased the Enron
20  bonds from defendant through its San Francisco office. A substantial part of the events, acts,
21  omissions and transactions complained of herein, including the concealment of information to
22  plaintiffs, occurred in this District. At all relevant times herein, defendant conducted substantial
23  business and/or committed violations of United States law by acts committed in this District.

24        8.     The statutory safe harbor provided for forward-looking statements under certain
25  circumstances does <u>not</u> apply to the defendant's false statements and material omissions alleged
26  in this Complaint. Defendant's statements were not identified as forward-looking statements
27  when made, they were not accompanied by meaningful cautionary statements identifying
28  important factors which could cause actual results to differ materially from those in forward-

2

**COMPLAINT**

looking statements, or they were not forward-looking statements within the meaning of the statute. Alternatively, to the extent any statements pleaded herein are considered to be "forward-looking," defendant is liable for those statements because at the time each of those statements was made, the speaker knew that the statement was false and the statement was authorized and/or approved for issuance by the defendant who knew that those statements were false when made.

### III. THE PARTIES

#### A. Plaintiffs

9. Plaintiffs William Bennett and Michele Borovac are residents of Half Moon Bay, California. During the Class Period, plaintiffs had a brokerage account with defendant, through its offices in San Francisco, California. On November 16, 2001, at the solicitation of defendant's representative, Tom Fezler, who was acting as plaintiffs' broker and advisor in defendant's San Francisco office, plaintiffs jointly purchased $100,000 face value of Enron bonds at a bond price of $94.00 for a total purchase price of $95,990.00. Just two weeks later, on December 3, 2002, one day after Enron declared bankruptcy, plaintiffs sold these bonds for a total of $17,495.25.

#### B. Defendant

10. Defendant H&R Block Financial Advisors, Inc. is a registered broker-dealer and member of NASD, with offices throughout the United States, including San Francisco, and with its principal place of business in Detroit, Michigan. H&R Block Financial Advisors, Inc. is a subsidiary of H&R Block Inc., the tax preparation and accounting firm. Defendant H&R Block Financial Advisors, Inc. is hereinafter referred to as "H&R Block."

11. Except as described herein, plaintiffs are ignorant of the true names of defendants sued as Does 1 through 20 inclusive and, therefore, sues these defendants by such fictitious names. Plaintiffs will seek leave of the Court to amend this Complaint to allege their true names and capacities when they are ascertained. Plaintiffs allege that each of these Doe Defendants is responsible in some manner for the acts and occurrences alleged herein, and that plaintiffs' damages were caused by such Doe Defendants.

12. Defendant, and the Doe Defendants, and each of them, are individually sued as participants and as aiders and abettors in the improper acts, plans, schemes, and transactions, to induce plaintiffs to purchase and hold the debt securities that are the subject of this Complaint.

13. Various other people, firms, and corporations, presently unknown to plaintiffs and sued herein as Does 1 through 20 in this Complaint, have participated as members of the alleged scheme or acted in furtherance of it, or aided or assisted in carrying out its purposes as alleged in this Complaint, and have performed acts and made statements in furtherance of the violations and conspiracy.

14. At all relevant times, each Defendant was and is the agent of each of the remaining Doe Defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each Defendant ratified and/or authorized the wrongful acts of each of the other Doe Defendants.

## IV. FACTUAL ALLEGATIONS

15. Enron was the world's largest energy trader, and was also engaged in myriad other businesses, including pipelines, telecommunications, and water. According to the 2001 Fortune 500 rankings, Enron was the seventh largest company in the world, ahead of IBM, reporting revenue for 2000 of over $100 billion and net income of approximately $1 billion.

16. However, on December 2, 2001, Enron filed bankruptcy, admitting that it had to restate its financial results for the previous four years, drastically reducing its reported income and increasing its reported debt. After Enron filed for bankruptcy, its auditor, Arthur Andersen LLP ("Andersen"), was found guilty of criminal violations and has been, for all intents and purposes, forced out of business. One of Enron's ex-officers has pleaded guilty to charges of money laundering and fraud. Defendant Andrew Fastow, its former Chief Financial Officer, was indicted on numerous counts of securities fraud, wire and mail fraud, money laundering, and conspiracy, and pleaded guilty to two conspiracy counts in January 2004. Two former CEOs, Kenneth Lay and Jeffrey Skilling, were indicted for criminal fraud. The demise of Enron is one of the largest financial debacles in U.S. business history.

17. During a five week period **just prior to** Enron's bankruptcy, beginning on or about October 29, 2001 and continuing to November 27, 2001, and as H&R Block was closely monitoring the deteriorating financial condition of Enron, H&R Block launched a widespread sales program designed to solicit and sell worthless Enron bonds to unsuspecting brokerage clients in order to earn profits for itself.

18. Plaintiffs are informed and believe that, between October 29, 2001 and November 27, 2001, defendant was able to sell over $16 million worth of Enron bonds to over 800 of the firm's customers, in approximately 40 states. The Enron bonds included (1) Bond 1 (CUSIP 293561AF3), which was issued on or about June 22, 1998 and matured on June 15, 2003, with a coupon of 9 7/8%; (2) Bond 2 (CUSIP 293561CBO), which was issued on or about June 6, 2000 and matured on June 15, 2003, with a coupon of 7 7/8%; and Bond 3 (CUSIP 293561 BL9), which was issued on or about August 7, 1997 and matured on August 1, 2002, with a coupon of 6 1/2%. H&R Block had purchased the bonds shortly before it began selling them to its customers.

19. Defendant, through its representatives, solicited the sale of Enron bonds through uniform sales materials, scripts and presentations which highlighted the safety of the bonds backed by the corporate size and strength of Enron. The brokers emphasized that Enron was a large company and that the bonds represented a good, short-term opportunity to achieve a high return on bonds that were investment grade.

20. Conversely, defendant, through its representatives, uniformly failed to disclose internally known risks associated with the Enron bonds. At the same time defendant was promoting the safety of the Enron bonds, defendant knew yet uniformly concealed from plaintiffs and the Class members the material facts that (1) Enron was experiencing severe and deteriorating financial problems, (2) defendant had decided to internally downgrade Enron securities, and (3) defendant had created secret, increased incentives for its sales force to dump the Enron bonds on unsuspecting clients in order to reap profits for itself.

21. For example, according to the NASD disciplinary complaint, the NASD Press Release dated November 8, 2004, and November 8 and 9, 2004 articles from AP, Reuters, Bloomberg, the Wall Street Journal, and the New York Times reporting on the regulatory

1  proceedings, and unbeknownst to plaintiffs and the Class, H&R Block internally decided to
2  remove another Enron security, Enron Capital Trust II, from its approved list of products because
3  of its increasing concerns about Enron's debt ratings. In his notification to the firm's registered
4  representatives and branch managers regarding this action, including the San Francisco offices,
5  H&R Block's Director of Research stated that the security was being removed from the approved
6  list because Enron "is the subject of lawsuits and a pending SEC inquiry into certain related-party
7  transactions which give us concern regarding the company's debt ratings." At the same time
8  H&R Block was taking such internal remedial actions, it was concealing such concerns from
9  plaintiffs and the Class in their solicitation and sale of Enron bonds.

10  22.  Similarly, according to the NASD disciplinary complaint, the NASD Press
11  Release dated November 8, 2004, and November 8 and 9, 2004 articles from AP, Reuters,
12  Bloomberg, the Wall Street Journal, and the New York Times reporting on the regulatory
13  proceedings, and unbeknownst to plaintiffs and the Class, H&R Block created a secret
14  commission structure for company brokers, whereby they would be paid a sales credit for the sale
15  of Enron bonds above sales credits payable on other bond products. For example, as of October
16  29 and 30, 2001, H&R Block paid its brokers gross sales credits of $10 per bond ($1,000 of face
17  amount of Enron bonds). Starting on October 31, 2001 and continuing through the Class Period,
18  H&R Block increased the gross sales credit to $15 a bond and to $17.50 per bond for retail sales
19  of 100 or more. This sales credit was more than twice the typical sales credit for bonds of similar
20  rating and maturity. Again, H&R Block concealed from plaintiffs and the Class the material fact
21  that it was giving higher incentives to its sales force in order to maximize profits. The program
22  worked exactly as designed for H&R Block, who generating hundreds of thousands of dollars in
23  profits from sales of Enron bonds while, literally within days of the sales, investors lost millions
24  of dollars from the same bonds.

25  23.  While Enron's financial condition continued to deteriorate throughout the
26  remainder of November 2001, and the Class Period, defendant continued to sell the Enron bonds.
27  For example, on November 19, 2001, Enron filed its Form 10Q with the SEC for the third
28  quarter of 2001, ending September 30, 2001. Enron disclosed that a note payable in the amount

1 of $690 million related to a limited partnership had been accelerated due to a downgrade in Enron's debt rating, and other additional debt amounts would be accelerated if the debt rating fell below investment grade. In addition, Enron disclosed that Andersen had not completed, and was unable to complete, its review of the third quarter financial statements prior to filing with the SEC due to an on-going investigation by the Enron Board's Special Committee.

24. On November 28, 2001, Enron debt securities were downgraded to "junk bond" status, *i.e.*, below investment grade, and Dynegy announced termination of the merger agreement with Enron.

25. On December 2, 2001, Enron filed Chapter 11 bankruptcy, constituting what was then the largest bankruptcy in U.S. history. When Enron declared bankruptcy, the value of the Enron bonds disintegrated.

26. Unfortunately, to their detriment, plaintiffs continued to hold these bonds during the financial fraud described herein based on the belief that the financial information disseminated by defendant was accurate and that all material information had been disclosed. Plaintiffs were unaware of the vast scheme being undertaken by defendant to defraud its own clients, justifiably believing that defendant – its broker – was representing their best interests.

27. On November 8, 2004, securities regulators charged H&R Block with fraud in the sale of the Enron bonds. In its press release, NASD Vice Chairman Mary Schapiro stated, "H&R Block brokers betrayed that trust by selling these investors highly risky Enron bonds, using misleading information at a time when the brokers knew, or should have known, of the company's serious financial problems – problems which foreshadowed the collapse of the firm. That H&R Block gave the brokers extra financial incentives to sell these troubled bonds is simply intolerable behavior." Up until these NASD proceedings, there had never been any disclosure of defendant's wrongful sales scheme, its internal downgrading of Enron securities, and the secret incentive payments to brokers.

## V. CLASS ALLEGATIONS

28. Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure, Rule 23. The Class is defined as follows:

> All persons and entities who purchased Enron corporate bonds from defendant H&R Block Financial Advisors, Inc. from October 29, 2001 through November 27, 2001 (the "Class Period") and suffered damages (the "Class").

Excluded from the Class is the defendant herein, and the subsidiaries, parents, affiliates, or controlled persons or entities of defendant, as well as its employees or representatives.

29. Enron's debt and bond securities sold during the Class Period were traded on an efficient market.

30. The members of the Class are so numerous that joinder of all members is impracticable. Plaintiffs are informed and believes that the Enron bonds were sold by defendant to over 800 Class members. Class members can be identified from business records of defendant.

31. Plaintiffs' claims are typical of the claims of the members of the Class, as plaintiffs and the Class were induced to purchase Enron bonds based upon the same false statements and omissions, were damaged thereby.

32. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests which are contrary to or in conflict with those of the Class members which they seek to represent.

33. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to individually seek redress for the wrongs done to them. Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

34. There is a well-defined community of interest in the questions of law and fact involved in this case. Common questions of law and fact exist as to all members of the Class,

and predominate over any questions affecting solely individual members of the Class. Among questions of law and fact common to the Class are:

  a. whether the 1934 Act was violated by defendant;

  b. whether defendant misrepresented material facts;

  c. whether defendant failed to disclose material facts;

  d. whether defendant acted with scienter; and

  f. whether Class members were damaged and the measure of damages.

 35. The names and address of the Class members are available from the business records of defendant. Since defendant sends periodic mail to its customers, it will have the most current addresses for the Class members. Notice can be provided to the Class members by first class mail and by using other techniques customarily used in class actions arising under the federal securities law.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Violations of §10(b) of the 1934 Act and Rule 10b-5)**

 36. Plaintiffs hereby incorporate all of the foregoing paragraphs.

 37. This claim is asserted by plaintiffs and the Class against defendant for violation of Section 10(b) of the 1934 Act, and Rule 10b-5 promulgated thereunder.

 38. Defendant engaged in a plan, scheme, and unlawful course of conduct pursuant to which it knowingly and recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud upon plaintiffs and other members of the Class. Defendant made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading which operated as a fraud and deceit upon plaintiffs and the Class who purchased Enron bonds from defendant.

 39. The purpose and effect of this scheme was to artificially inflate the price of the bonds to induce plaintiffs and members of the Class to purchase the Enron bonds from defendants in order to reap sales commissions and benefits. Defendant issued statements and

9

**COMPLAINT**

reports about the Enron bonds, as described herein above, which were materially false and misleading in violation of Section 10(b) and Rule 10(b)-5.

40. Defendant knew or recklessly disregarded the facts that the above acts and practices, misleading statements and omissions would adversely affect the integrity of the market in the Enron bonds and artificially inflate or maintain the prices of such bonds. Defendant, by acting as described herein, did so knowingly or in such a reckless manner as to constitute a fraud and deceit upon plaintiffs and the Class.

41. As a result of the dissemination of the false and misleading statements, the market price of the Enron bonds was artificially inflated at the time of the sale. In ignorance of the adverse facts concerning Enron's business, Enron's financial condition, defendant's internal downgrades of Enron securities, the true value of the Enron bonds, and defendant's extra financial incentives to its brokers for selling the Enron bonds, plaintiffs and members of the Class purchased the Enron bonds at artificially inflated prices, relying upon the integrity of defendant and the market, and were damaged thereby.

## SECOND CAUSE OF ACTION

### (Fraud and Concealment)

42. Plaintiffs hereby incorporate all of the foregoing paragraphs.

43. Defendant made material representations and omissions to plaintiffs and the Class which were false and misleading, including but not limited to those representations and omissions as to Enron's business, Enron's financial condition, defendant's internal downgrades of Enron securities, the true value of the Enron bonds, and defendant's extra financial incentives to its brokers for selling the Enron bonds, described above.

44. Plaintiffs purchased the Enron bonds in justifiable reliance on defendant's representations and/or if they had known about the true facts concealed from them would not have purchased or held on to the Enron bonds.

45. As a result of the wrongful conduct of defendant, plaintiffs and the Class have suffered and will continue to suffer economic losses and other general and specific damages, all in an amount to be determined according to proof.

10

**COMPLAINT**

46. The aforementioned acts of defendant were done maliciously, oppressively, and with intent to defraud, and plaintiffs and the Class are entitled to punitive and exemplary damages in an amount to be shown according to proof at the time of trial.

### THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty)

47. Plaintiffs hereby incorporate all of the foregoing paragraphs.

48. By virtue of the relationship with plaintiffs and the Class as broker and client, defendant set out to create and did in fact create a special relationship of trust and confidence, and thereby owed plaintiffs and the Class members a fiduciary duty. A fiduciary relationship existed at all times herein.

49. Defendant breached this fiduciary duty by, among other things, soliciting and completing the sales of the Enron bonds to plaintiffs and the Class members, misrepresenting and concealing the true facts, and pursuing an investment course targeted solely for the generation of commissions and fees to defendant, in violation of ethical and professional obligations created by its position.

50. Defendant, and the Doe Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance in accomplishing the wrongful conduct, their wrongful goals, and other wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, defendant and each of the Doe Defendants acted with an awareness of his/its primary wrongdoing and realized that his/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

51. As a result of the wrongful conduct of defendant, plaintiffs and the Class have suffered and will continue to suffer economic losses and other general and specific damages, all in an amount to be determined according to proof.

COMPLAINT

VII. **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs, on behalf of themselves and the Class, pray for judgment as follows:

1. Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein, and declaring plaintiffs to be proper Class representatives and plaintiffs' counsel as counsel for the Class;

2. Awarding plaintiffs and all members of the Class compensatory damages and exemplary damages in an amount to be proven at trial;

3. Awarding plaintiffs and members of the Class pre-judgment interest, as well as reasonable attorneys' fees, expert witness fees and other costs;

4. Awarding such other relief as this Court may deem just and proper.

Dated: November 15, 2004          COTCHETT, PITRE, SIMON & McCARTHY

By: _____
         MARK C. MOLUMPHY

Attorneys for Plaintiffs and the Class

**JURY DEMAND**

Plaintiffs demand a jury trial on all issues so triable.

Dated: November 15, 2004          COTCHETT, PITRE, SIMON & McCARTHY

By: _____
         MARK C. MOLUMPHY

Attorneys for Plaintiffs and the Class

12

COMPLAINT

## CERTIFICATION OF NAMED PLAINTIFF

I, William Bennett, declare as to the claim asserted under the federal securities laws:

1. I am a named plaintiff in this action, which is being filed on my behalf and on behalf of all others similarly situated. I make this sworn certification pursuant to 17 U.S.C. §78 u-4(a)(2).

2. I have reviewed the Complaint, which is being filed on my behalf and on behalf of all others similarly situated, and I authorize it to be filed.

3. I did not purchase the securities that are the subject of this action, namely bonds of Enron Corporation, at the direction of plaintiffs' counsel nor to participate in any private action arising under 15 U.S.C. §§77 et seq.

4. I am willing to serve as a representative, including providing testimony at deposition and trial, if necessary.

5. During the Class Period specified in the Complaint, I (in a joint account with Michele Borovac) made the following transaction(s) in securities that are the subject of this action: On November 16, 2001, I purchased $100,000 face value of Enron bonds at a bond price of $94.00 for a total purchase price of $95,990.00. On December 3, 2002, I sold these bonds for a total of $17,495.25.

6. During the three year period prior to the date of this certification, I have neither sought to serve nor served as a representative party on behalf of a class in any action under the Securities Exchange Act of 1934.

7. I agree not to accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including loss wages) directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13 day of November 2004 at _____, California.

WILLIAM BENNETT

## CERTIFICATION OF NAMED PLAINTIFF

I, Michele Borovac, declare as to the claim asserted under the federal securities laws:

1. I am a named plaintiff in this action, which is being filed on my behalf and on behalf of all others similarly situated. I make this sworn certification pursuant to 15 U.S.C. §78 u-4(a)(2).

2. I have reviewed the Complaint, which is being filed on my behalf and on behalf of all others similarly situated, and I authorize it to be filed.

3. I did not purchase the securities that are the subject of this action, namely bonds of Enron Corporation, at the direction of plaintiffs' counsel nor to participate in any private action arising under 15 U.S.C. §§78 a, et. seq.

4. I am willing to serve as a plaintiff class representative, including providing testimony at deposition and trial, if necessary.

5. During the Class Period specified in the Complaint, I (in a joint with William Bennett) made the following transaction(s) in securities that are the subject of this action: On November 16, 2001, I purchased $100,000 face value of Enron bonds at a bond price of $94.00 for a total purchase price of $95,990.00. On December 3, 2002, I sold these bonds for a total of $17,495.25.

6. During the three year period prior to the date of this certification, I have neither sought to serve nor served as a representative party on behalf of a class in any action under the Securities Exchange Act of 1934.

7. I agree not to accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including loss wages) directly relating to the representation of the class, as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13 day of November 2004 at Half Moon Bay, California.

MICHELE BOROVAC