1

2

3

4

5

6

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

7

8   WILLIAM M. BENNETT and MICHELE L.
    BOROVAC, Individually and on Behalf of All
    Others Similarly Situated                              No. C 04-4848 MHP

9
                            Plaintiffs,            **MEMORANDUM & ORDER**
10         v.                                      **Re: Motion to Dismiss**

11   H&R BLOCK FINANCIAL ADVISORS,
     INC., and Does 1-10,
12
                            Defendants.
13   _____/

14

15         William Bennett and Michele Borovac have brought the present action on behalf of all persons

16   who purchased Enron corporate bonds from defendant H&R Block Financial Advisors, Inc. ("H&R

17   Block") from October 29, 2001 through November 27, 2001 (the "class period").  Plaintiffs allege that

18   defendant violated federal securities laws by engaging in a fraudulent effort to solicit and sell $16 million of

19   Enron bonds that were in fact worthless.  Now before the court is defendant's motion to dismiss for

20   failure to state a claim upon which relief can be granted.   Having considered plaintiffs' arguments and

21   submissions, and for the reasons set forth below, the court rules on the motion as follows.

22

23   BACKGROUND[1]

24         In the largest bankruptcy in United States history, the Enron Corporation filed for Chapter 11 on

25   December 2, 2001.  The consequences of its collapse are well known: several criminal prosecutions, the

26   demise of Enron's auditor Authur Andersen LLP, massive economic losses, and a proliferation of related

27

28                                                 1

1  securities litigation.

2      The present action concerns the one month period immediately preceding Enron's bankruptcy

3  filing.  Plaintiffs allege that H&R Block engaged in a strategic effort to unload its holdings of Enron

4  corporate bonds on the basis of internal evaluations of Enron's emerging financial crisis.  The complaint

5  contains three principal theories of defendant's liability: (1) H&R Block conveyed false information to

6  investors during a large-scale solicitation and sales effort of worthless Enron bonds, (2) defendant failed to

7  disclose internal information concerning their own downgrading of Enron securities, and (3) defendant

8  created a secret incentive program by which its brokers were entitled to unusually high commissions for

9  sales of Enron bonds.

10      According to the allegations in the complaint, defendant sold $16 million worth of Enron bonds

11  (referred to as Bonds 1, 2, and 3) to more than 800 H&R Block customers during the class period.

12  Defendant's internal evaluations had revealed these bonds were "worthless" due to Enron's "severe and

13  deteriorating financial problems," yet the brokerage firm initiated a widespread sales program for the

14  bonds in order to "dump" their Enron holdings.  Defendant used a special commission structure that

15  incentivized the sale of Enron bonds with unusually high sales credits for brokers.  The complaint identifies

16  one specific example of insider opinion on Enron securities: at an undated time, defendant's Director of

17  Research notified his representatives and branch managers that the equity Enron Capital Trust II had been

18  removed from the approved list of products due to concern about the company's debt rating.

19      On November 8, 2004, NASD issued a press release announcing that it was charging H&R

20  Block with fraud in the sale of Enron bonds to more than 800 customers during the time frame defined

21  herein as the class period.  NASD estimated that H&R Block brokers recommended the sale of over $16

22  million worth of Enron bonds, and the agency is charging H&R Block with receiving profits of more than

23  $500,000.

24      Just one week later, on November 15, 2004, plaintiffs filed the present complaint with the law

25  firm Cotchett, Pitre, Simon, & McCarthy as counsel.  Their motion for appointment as lead plaintiff was

26  unopposed, and this court granted them lead plaintiff status on March 1, 2005.  The complaint alleges

27

28                                                2

1    violations of section 10(b) of the Securities and Exchange Act of 1934 and Rule 10(b)(5) promulgated

2    thereunder, fraud and concealment under California common law, and breach of fiduciary duty under

3    California common law.

4

5    LEGAL STANDARD

6        A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of

7    a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  Because Rule 12(b)(6) focuses on the

8    "sufficiency" of a claim rather than the claim's substantive merits, "[o]rdinarily, a court may look only at

9    the face of the complaint to decide a motion to dismiss."  Van Buskirk v. Cable News Network, Inc.,

10   284 F.3d 977, 980 (9th Cir. 2002).  Under Rule 12(b)(6), "unless it appears beyond doubt that plaintiff

11   can prove no set of facts in support of her claim which would entitle her to relief," a motion to dismiss

12   must be denied.  Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996)

13   (citation omitted); see also Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

14       The Private Securities Litigation Reform Act of 1995 ("PSLRA") significantly altered pleading

15   requirements in private securities litigation in order to eliminate meritless claims.  In re Silicon Graphics,

16   Inc. Sec. Litig., 183 F.3d 970, 988 (9th Cir. 1999).  The statute requires that a securities fraud complaint

17   must plead both fraud and scienter.  See 15 U.S.C. § 78u-4(b)(1)-(2).  Plaintiffs must identify (1) each

18   statement alleged to have been misleading, (2) the reason or reasons why the statement is misleading, and,

19   (3) if an allegation regarding the statement or omission is made on information and belief, the complaint

20   shall state with particularity all facts on which that belief is formed.  See 15 U.S.C. § 78u-4(b)(1); In re

21   The Vantive Corp. Sec. Litig., 283 F.3d 1079, 1085 (9th Cir. 2002).  Allegations are deemed to be held

22   on information and belief, and thus subject to the particularity requirement, unless plaintiffs have personal

23   knowledge of the facts.  In re The Vantive, 283 F.3d at 1085, n.3.  A complaint must also "state with

24   particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."

25   15 U.S.C. § 78u-4(b)(2).  The Ninth Circuit has defined the requisite state of mind as "deliberate

26   recklessness, at minimum," and requires plaintiffs to plead "particular facts giving rise to a strong

27

28                                                    3

1    inference" of that mental state.  <u>See</u> <u>Silicon Graphics</u>, 183 F.3d at 974. "When determining whether

2    plaintiffs have shown a strong inference of scienter, the court must consider <u>all</u> reasonable inferences to be

3    drawn from the allegations, including inferences unfavorable to the plaintiffs." <u>Gompper v. VISX, Inc.,</u>

4    298 F.3d 893, 897 (9th Cir. 2002) (emphasis in original).

5

6    <u>DISCUSSION</u>

7            Defendant has moved to dismiss this action on the basis that plaintiffs fail to satisfy the PSLRA

8    pleading requirement for section 10(b) claims, fail to allege an independent violation of fiduciary duty that

9    is not preempted and barred by the Securities Litigation Uniform Standards Act of 1998, and fail to allege

10   fraud with particularity pursuant to Rule of Civil Procedure 9(b).

11

12   I.      <u>Plaintiffs' 10(b) Claims</u>

13           Plaintiffs allege that defendant violated section 10(b) of the Securities and Exchange Act of 1934

14   by perpetrating material misrepresentations and omissions, as well as a fraudulent scheme, to induce

15   plaintiffs to purchase Enron bonds at inflated prices.  Comp. ¶¶ 36-41.  Defendant argues that plaintiffs'

16   section 10(b) claim fails to plead a materially false or misleading statement or omission, fails to plead a

17   fraudulent scheme, fails to plead scienter as required by the PSLRA, and fails to allege loss causation.

18           A.      <u>Materially False or Misleading Statement or Omissions</u>

19           The complaint alleges a two-fold theory of section 10(b) liability.  Firstly, plaintiffs allege

20   misrepresentations, namely that defendant solicited the sale of Enron bonds through sales materials and

21   presentations emphasizing that "Enron was a large company and that the bonds represented a good,

22   short-term opportunity to achieve a high return on bonds that were investment grade."  Comp. ¶ 19.

23   Secondly, plaintiffs plead omissions, alleging that defendant "uniformly failed to disclose internally known

24   risks associated with the Enron bonds," concealing from plaintiffs that "(1) Enron was experiencing severe

25   and deteriorating financial problems, (2) defendant had decided to internally downgrade Enron securities,

26   and (3) defendant had created secret, increased incentives for its sales force to dump the Enron bonds on

27

28                                                    4

1    unsuspecting clients in order to reap profits for itself." Id. ¶ 20.  Defendant argues that the current

2    complaint fails to satisfy the pleading standards of 15 U.S.C. section 78u-4(b)(1).

3           Plaintiffs have not satisfied the PSLRA pleading standard for section 10(b)(5)(b) causes of

4    action.  Their hasty twelve-page complaint—notably filed one week after the NASD disciplinary

5    complaint—does not allege a single specific statement made by defendant, nor any reasons why

6    defendant's assertions during the class period were misleading given what defendant or the public market

7    knew at the time.  See 15 U.S.C. § 78u-4(b)(1) ("the complaint shall specify each statement alleged to

8    have been misleading, the reason or reasons why the statement is misleading").  Generalizations such as "a

9    widespread sales program" and solicitation of the sale of the Enron bonds through "uniform sales

10   materials, scripts, and presentations which highlighted the safety of the bonds" are inadequate to qualify as

11   "statements" under the meaning of the PSLRA.  See Comp. ¶ 17, 19.  Plaintiffs have not alleged any

12   specific facts related to the content, timing, or frequency of the alleged sales presentations, nor any facts

13   supporting the reliability of their allegations.  They have failed to specify the means by which named

14   plaintiffs were solicited to purchase Enron bonds, or how those bonds were priced relative to the general

15   market for the same bonds across the country.  Without such specifics, there is no way to distinguish

16   between the publically-available information about Enron at the time and the information asserted by

17   defendant.

18          Nor have plaintiffs satisfied the PSLRA with regards to their allegations of misleading omissions.

19   "To be actionable under the securities laws, an omission must be misleading; in other words it must

20   affirmatively create an impression of a state of affairs that differs in a material way from the one that

21   actually exists."  Brody v. Transitional Hospitals Corp., 280 F.3d 997, 1006 (9th Cir. 2002).  Plaintiffs'

22   theory of the case is that defendant's sales presentations affirmatively represented the stability and

23   desirability of the Enron bonds, thus omitting the cautionary indicators that H&R Block knew internally.

24   Specifically, plaintiffs allege that defendant concealed Enron's deteriorating financial state, internally

25   downgraded Enron securities, and launched and concealed an incentive program for defendant's sales

26   force to dump the Enron bonds on clients.   Comp. ¶ 20.

27

28                                                           5

1    Plaintiffs have inadequately pleaded these alleged omissions.  First of all, they have not provided

2    any particularized basis for their allegation that defendant had internally downgraded Enron securities

3    based on knowledge and/or internal evaluations of Enron's financial health.[2]  Other than a single allegation

4    regarding an undated "notification" of defendant's employees that Enron Capital Trust II was being

5    removed from the list of approved securities, the complaint does not contain a single allegation about the

6    nature, source, extent, timing, or communication of defendant's alleged internal opinions about Enron

7    bonds.  See Comp. ¶ 21.  The complaint simply provides extremely conclusory allegations that defendant

8    "failed to disclose internally known risks," internally downgraded Enron securities, and created a secret

9    commission structure.  See id. ¶¶ 17-22.  By failing to plead where and when internal downgrades were

10   made, who knew of them, to which Enron securities they applied, and/or to what extent the downgrades

11   cautioned against investment, plaintiffs have failed to distinguish their allegations from the type of generic

12   conjectures prohibited by the PSLRA.

13   Nor have plaintiffs specified any basis upon which they know of defendant's alleged internal

14   evaluations of Enron, bond sales campaign, or incentive structure for Enron sales.  As the complaint does

15   not allege personal knowledge, plaintiffs' allegations are based on information and belief and therefore

16   must state with particularity all facts on which that belief is formed.  15 U.S.C. § 78u-4(b)(1); In re

17   Vantive, 283 F.3d at 1085, n.3.  To support the theory that defendant had downgraded Enron securities

18   internally, plaintiffs only plead one basis of knowledge: the NASD disciplinary complaint and the

19   newspaper articles reporting that complaint.  See Comp. ¶¶ 21-22.  Indeed, other than attributing the

20   internal downgrading of the Enron Capital Trust II equity to the NASD allegations, the complaint lacks

21   any source of information and belief that defendant downgraded Enron Bonds 1, 2, and 3.  See id. ¶¶ 18,

22   22.

23   With the NASD complaint serving as the only source of knowledge for plaintiffs' allegations,

24   plaintiffs have not satisfied the particularity requirements for misleading statements and omissions.

25   Defendant has not moved to strike the NASD-based allegations from the complaint, but rightfully points

26   out that some courts have stricken allegations based on unadjudicated administrative filings.  See, e.g.,

27

28
                                          6

1    Lipsky v. Commonwealth United Corp., 551 F.2d 887, 892-94 (2d Cir. 1976); In re Merrill Lynch &

2    Co., Inc. Research Reports, 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003).  In any case, citation of the

3    unadjudicated NASD administrative complaint is not a basis for facts pleaded with particularity.

4        The gaps in plaintiffs' pleading of material misrepresentations undermine their allegations of

5    omissions.  Under the Ninth Circuit standard, actionable omissions must create an impression of a "state

6    of affairs that differs in a material way from the one that actually exists."  See Brody, 280 F.3d at 1006.

7    Without particularity as to the statements alleged to be misleading affirmations of Enron's financial health,

8    plaintiffs cannot show that the class members were given a picture of the company's condition that

9    differed from reality.  The relevant "reality" in this case is what *defendant actually believed* was the

10    financial condition of Enron and the health of its securities.  As plaintiffs virtually concede, defendant

11    cannot be held liable for the difference between its public assessments of Enron securities and the *actual*

12    *viability* of those securities, as there are no allegations in this case that defendant had insider information

13    that the Dynergy merger would fall through, Enron was plagued with financial fraud scandals, and Enron

14    was careening towards bankruptcy.  The conclusory allegations in paragraph 19 of the complaint are

15    insufficient to state actionable omissions.

16        Lastly, the parties dispute whether "fraud-on-the-market" and "truth-on-the-market" are

17    appropriate allegations and defenses in light of the specific circumstances of this case.  In a "fraud-on-the-

18    market" case, "an omission is materially misleading only if the information has not already entered the

19    market."  Provenz v. Miller, 102 F.3d 1478, 1493 (9th Cir. 1996).  Defendant argues that extensive

20    information predicting Enron's slide towards bankruptcy was available on the market, and thus that any

21    omissions pleaded in this case are not materially misleading.  This argument amounts to a "truth-on-the-

22    market" defense, in which "a defendant can escape liability for a false statement—or one that reveals less

23    than the full truth—by showing that the market was not affected by the misrepresentation because the truth

24    of the matter was known already and had been factored into market prices."  Id., n.4.  Plaintiffs argue

25    that defendant is not entitled to such a defense for two reasons: (1) defendant failed to disclose its own

26    *internal* decisions relating to its portfolio of Enron bonds, and (2) the particular circumstances of the case

27

28                          7

1    created special duties of disclosure owed by a broker to its own clients.  See Pls' Opp'n at 12.  Plaintiffs

2    seek to distinguish the public market which might have known of the deteriorating financial condition of

3    Enron from H&R Block's customers, a sub-market to which defendant had an affirmative obligation to

4    reveal its concerns.  Id. at 13.

5          The court rules on this debate as follows.  Defendant is correct that plaintiffs must clarify (and thus

6    commit to) a cohesive theory of liability in this case.  As currently written, this court cannot see how

7    plaintiffs can plead, on the one hand, a "fraud-on-the-market" and efficient market theory of liability in

8    order to avoid pleading individual reliance on defendant's representations, and on the other, plead that the

9    relevant market is only defendant's clients reached by individual sales efforts.[3]  See, e.g. Compl. ¶ 41

10   (alleging that plaintiffs purchased the bonds "relying upon the integrity of defendant and the market"); Pls'

11   Opp'n at 13.  If, once properly specified, the allegations at the heart of this case concern point-of-sale

12   conversations as opposed to uniform sales presentations, then this case may not be properly characterized

13   as a section 10(b) class action.  Indeed, in their oral arguments to this court, plaintiff stated that the

14   marketing of Enron bonds to named plaintiffs was made via phone solicitation by a single broker—an

15   event that would suggest an individual reliance theory of fraud that may face hurdles at Rule 23

16   certification stage.  See Comp. ¶ 9 (alleging that plaintiffs' purchased their bonds "at the solicitation of

17   defendant's representative, Tom Fezler, who was acting as plaintiffs' broker and advisor").

18         However, if plaintiffs do pursue a complaint alleging, with requisite specificity and consistency, a

19   fraud-on-the-market theory, then they must carefully articulate the relationship between the

20   misrepresentations or omissions alleged and the public information about Enron available to plaintiffs.  As

21   the court understands such a theory in the factual context of this case, plaintiffs would need to plead H&R

22   Block's market share of Enron bonds, i.e. whether it had a large enough share such that its evaluations of

23   the bonds impacted their public market value.  The present action is an unusual breed of securities

24   litigation, because the "insider's" alleged misrepresentations or omissions are the brokerage house's own

25   internal opinion of the value of Enron bonds, and these statements or omissions coexisted with the

26   brokerage house's external grading of the bonds and extensive public information regarding the bonds'

27

28

1   grade, value, and risk potential.  In this mixed setting, plaintiffs must make their theory of securities fraud

2   liability and its relationship to brokerage house duties more clear.  Based on the facts and theories thusfar

3   alleged, plaintiffs cannot claim immunity to a truth-on-the-market defense in which defendant proves "that

4   the information that was withheld or misrepresented was transmitted to the public with a degree of

5   intensity and credibility sufficient to effectively counterbalance any misleading impression created by [the]

6   insider's one-sided representations."  See Provenz, 102 F.3d at 1493-94 (internal quotations omitted).

7           On the other hand, if plaintiffs' theory depends on H&R Block's own "market" of Enron bonds,

8   plaintiffs would at the very least need to allege facts showing that H&R Block had created a sub-market

9   of Enron bonds; that its alleged misrepresentations and omissions related to their sale; and that their

10  misrepresentations and omissions caused plaintiffs' loss.  At this point, this theory appears dubious.  While

11  this court does not presently opine on plaintiffs' intention, they are advised that they must make a more

12  comprehensible case for a fraud-on-the-market theory involving a sub-market for publically-traded

13  bonds, if such a theory is in fact tenable without obligating plaintiffs to an individual reliance setting.

14          Plaintiffs have not properly alleged misleading statements or omissions.

15          B.        Fraudulent Scheme

16          Plaintiffs argue that their section 10(b) cause of action encompasses fraudulent scheme allegations,

17  as well as allegations of misrepresentations and omissions.  See 17 C.F.R. § 240.10b-5(a)-(c).  The

18  scheme alleged includes exploitation of defendant's own customers by marketing and selling Enron bonds

19  without revealing defendant's own concerns and internal downgrades of the securities.  See Pls' Opp'n at

20  16.  As currently written, the complaint fails to state a claim for a fraudulent scheme that extends beyond

21  misrepresentations or omissions.  See Lentell v. Merill Lynch & Co., Inc., 396 F.3d 161, 177 (2d Cir.

22  2005) (holding that "where the sole basis for such claims is alleged misrepresentations or omissions,

23  plaintiffs have not made out a market manipulation claim under Rule 10b-5(a) and (c), and remain subject

24  to the heightened pleading requirements of the PSLRA").  The fact that the audience for H&R Block's

25  alleged deceptions was the firm's own clients is insufficient to take the present action out of a Rule 10b-

26  5(b) theory of liability for misrepresentations or omissions.

27

28                                                      9

1      C.      Scienter

2          The PSLRA also requires a statement with particularity of facts giving rise to a strong inference of

3   scienter, i.e., a "mental state embracing intent to deceive, manipulate, or defraud." 15 U.S.C. §

4   78u-4(b)(2); In re Silicon Graphics Inc. Securities Litigation, 183 F.3d 970

5   (9th Cir. 1999). "A private securities plaintiff proceeding under the PSLRA must plead, in great detail,

6   facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." Id.

7   at 974.

8          Plaintiffs argue that the following alleged actions raise an inference of scienter: defendant followed

9   Enron's financial condition and launched a program to sell off Enron holdings, defendant prepared sales

10  materials describing the safety of Enron bonds, defendant concealed internal downgrading of Enron

11  bonds, defendant's Director of Research internally expressed concern regarding the company's debt

12  rating, and defendant created a commission structure to boost incentives for brokers to sell Enron bonds.

13  Comp. ¶¶ 17-22.

14         The linchpin of these allegations is that H&R Block possessed special internal knowledge of

15  Enron's precarious position. Yet plaintiffs have done nothing to raise an inference of internal knowledge

16  other than the conclusory allegation that it is so. This is inadequate under the PSLRA, which requires

17  plaintiffs to allege "specific contemporaneous statements or conditions" that demonstrate that defendant's

18  statement was misleading when made and "provide a list of all relevant circumstances in great detail." See

19  Ronconi v. Larkin, 253 F.3d 423, 432 (9th Cir. 2001) (internal quotations omitted); Silicon Graphics,

20  183 F.3d at 984. Under the PSLRA, plaintiffs must allege specific documents exhibiting internal

21  knowledge, as well as "detail[ing] with particularity the content of such data." Lipton, 284 F.3d at 1036.

22  See also Silicon Graphics, 183 F.3d at 985 (holding that "a proper complaint which purports to rely on

23  the existence of internal reports would contain at least some specifics from those reports as well as such

24  facts as may indicate their reliability").

25         Nor does the allegation of an incentive program satisfy the scienter requirement. Motive and

26  opportunity are relevant to establishing scienter, though scienter cannot rest on those allegations alone.

27

28                                          10

1    The Ninth Circuit has clearly held that incentives to enhance business prospects are insufficient allegations

2    of scienter.  See Silicon Graphics, 183 F.3d at 974 (holding that facts which indicate "a motive to commit

3    fraud and opportunity to do so may provide some reasonable inference of intent, [but] they are not

4    sufficient to establish a strong inference of deliberate recklessness"); Lipton v. Pathogenesis Corp., 284

5    F.3d 1027, 1038 (9th Cir. 2002) (holding that general allegations of motive, without more, are insufficient

6    to establish scienter).  Rather, facts must come closer to demonstrating intent.  Id.  Just as compensation

7    plans which reward executives for performance should not serve as a basis for allegations of fraud, so it

8    would be folly for this court to hold that incentives for brokers to sell securities provide a basis for

9    inferring intent to defraud.  Lipton, 284 F.3d at 1038 (holding that "[i]f scienter could be pleaded merely

10   by alleging that officers and directors possess motive and opportunity to enhance a company's business

11   prospects, virtually every company in the United States that experiences a downturn in stock price could

12   be forced to defend securities fraud actions") (internal quotations omitted).

13          Defendant correctly argues that plaintiffs' complaint also lacks any additional allegations that

14   would create an inference that defendant had access to insider information about Enron, such as a special

15   relationship between defendant and Enron insiders.  Def's Mot. at 16.  While internal insight into Enron's

16   financial risk based on market expertise might also serve as the basis for internal downgrades, as

17   discussed, it is not adequately pleaded here.   H&R Block properly raises the issue that the single specific

18   allegation of insider insight in the complaint, namely the removal of the Enron Capital Trust II equity from

19   defendant's approved investments, cannot support a host of allegations that defendant knew that the

20   Enron Bonds 1, 2, and 3 were high-risk and disadvantageous investments.

21          Plaintiffs have not alleged anything beyond the most brief and conclusory allegations of intent to

22   mislead, and therefore have not alleged facts giving rise to the necessary inference of scienter.  To allow

23   plaintiffs to proceed into complex, protracted discovery with the sort of broad-brush, conclusory

24   allegations at issue here would undermine the goal of the PSLRA to deter speculative "fishing

25   expeditions."  Silicon Graphics, 183 F.3d at 988.

26          D.      Loss Causation

27

28                                                        11

1    The basic elements of a cause of action for fraud involving publically-traded securities and

2    purchases or sales in public securities markets include economic loss and loss causation, "*i.e.*, a causal

3    connection between the material misrepresentation and the loss."  See Dura Pharm. Inc. v. Broudo, 125

4    S.Ct. 1627, 1631; 15 U.S.C. § 78u-4(b)(4).  The Supreme Court recently interpreted this element to

5    require plaintiffs to plead and prove proximate causation and economic loss.  Id. at 1634.  The Court

6    struck down the Ninth Circuit's holding that an investor may plead loss causation by alleging that the

7    security price was artificially inflated by the misrepresentations.  Id. at 1630.  While the Court emphasized

8    that plaintiffs are not subject to additional statutory requirements on the causation issue at the pleading

9    stage, it stated that "it should not prove burdensome for a plaintiff who has suffered an economic loss to

10    provide a defendant with some indication of the loss and the causal connection that the plaintiff has in

11    mind.

12    In H&R Block's reply, and in the hearing before this court, defendant interprets Dura to preclude

13    the present action entirely, and indeed to preclude any action against a brokerage house for securities

14    fraud.  See Reply at 2-5.  In effect, defendant argues that plaintiffs do not and cannot allege that H&R

15    Block caused Enron's bankruptcy, and therefore can never plead loss causation in this case.  As no

16    investor or market analyst can single-handedly cause a security's fall through its misrepresentations or

17    omissions, the argument goes, brokerage houses cannot be accused of proximately causing securities

18    losses.  Though this court agrees that plaintiff has not pleaded loss causation in the current complaint,

19    defendant's expansive interpretation of Dura goes too far and is foreclosed by the decision's narrow

20    language.  The focus of the opinion is strictly confined to rejecting the Ninth Circuit's artificial price

21    inflation method of pleading loss causation, and the opinion states expressly "[w]e need not, and do not,

22    consider other proximate cause or loss-related questions."  Dura, 125 S.Ct. at 1633-34.  Such restrained

23    language cannot be said to preclude any securities fraud liability for actors without direct control over the

24    value of a security.[4]

25    Fortunately, further interpretation of loss causation can be found elsewhere.  The present action is

26    similar in relevant respects to one considered by the Second Circuit applying that circuit's loss causation

27

28                                                           12

1    standard, which was adopted by the Supreme Court in Dura.  See Lentell v. Merrill Lynch & Co., Inc.,

2    396 F.3d 161 (2d Cir. 2005) (applying and interpreting Emergent Capital Investment Management, LLC

3    v. Stonepath Group, Inc., 343 F.3d 189 (2d Cir. 2003)); Dura, 125 S.Ct. at 1630, 1633 (citing

4    Emergent Capital approvingly, in contrast to the Ninth Circuit view).  In Lentell, plaintiffs alleged that

5    defendants had issued false and misleading reports recommending purchase in an internet company for the

6    sake of defendants' business advantage, and that as a result of these misrepresentations and omissions,

7    plaintiffs bought stocks that subsequently plummeted in value.  Lentell, 396 F.3d at 172.  The circuit found

8    that plaintiffs had failed to allege loss causation, because they failed to allege economic loss based on (1)

9    the market reacting negatively to the misrepresentations or corrective disclosures by defendants, or (2)

10   defendant concealing or misstating risks associated with the investment in the contested security, some of

11   which caused plaintiffs' loss.  Id. at 175.  The circuit helpfully defined loss causation, or proximate cause,

12   in this context: "a misstatement or omission is the 'proximate cause' of an investment loss if the risk that

13   caused the loss was within the zone of risk *concealed* by the misrepresentations or omissions alleged by

14   the disappointed investor."  Id. at 173 (emphasis in original).  In other words, the loss must be foreseeable

15   and it must be caused by the "materialization of the concealed risk."  Id.

16          In Lentell, the Second Circuit expressly rejected the theory of loss causation advanced by

17   defendant in the present action.  The circuit noted that an analogy to proximate cause at tort law is

18   imperfect, because "it cannot ordinarily be said that a drop in the value of a security is 'caused' by the

19   misstatements or omissions made about it, as opposed to the underlying circumstance that is concealed or

20   misstated."  Id. at 173.  Loss causation is a distinct principle taking into account the complex reality of

21   causation on a securities market, bridging a link not between the *statement* and the loss, but between the

22   *subject of the statement* and the loss.  See id. (quoting from Suez Equity Investors, L.P. v. Toronto-

23   Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001) that "'a plaintiff must allege. . . that the *subject* of the

24   fraudulent statement or omission was the cause of the loss suffered'").

25          Proceeding to the present complaint, plaintiffs pleaded that Enron bonds were "artificially inflated

26   at the time of the sale" as a result of defendant's misleading statements.  Comp. ¶ 41.  This reflected the

27

28                                                    13

1  Ninth Circuit pleading standard conclusively overruled by <u>Dura</u>.  125 S.Ct. at 1634.  Under the new

2  standard, plaintiffs have insufficiently alleged loss causation for two reasons.  First of all, the premise issue

3  of what defendant allegedly misrepresented and concealed remains too vague.  The complaint lacks clear

4  allegations as to what defendant knew, when they knew it, and what they did or did not disclose to their

5  customers.  Furthermore, the complaint lacks any allegation concerning loss causation itself, i.e. that the

6  information hidden by defendant disguised the precise risk to which the plaintiff fell victim.  Plaintiffs need

7  not plead that H&R Block's actions contributed to Enron's bankruptcy or fueled the distance of its fall in

8  the markets, but they must plead that defendant concealed risks that could have foreseeably caused

9  plaintiffs' losses.  Whether in fact, other superceding and unforeseeable causes affected the value of Enron

10 bonds is not an issue for disposition on a motion to dismiss; intervening causes are matters of proof to be

11 determined at trial.  <u>See Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.</u>, 343 F.3d 189,

12 197 (2d Cir. 2003).

13     Plaintiffs have not adequately alleged  loss causation.  Given the recent change in case law brought

14 by the <u>Dura</u> case since the filing of the complaint, leave to amend is particularly warranted.

15 II.     <u>Plaintiffs' Fraud and Fiduciary Duty Claims</u>

16     Defendant has also moved for dismissal of plaintiffs' state law claims for fraud and breach of

17 fiduciary duty.  They argue that both claims are preempted by the Securities Litigation Uniform Standards

18 Act of 1998 ("SLUSA") and both claims fail to satisfy the pleading requirements of Federal Rule of Civil

19 Procedure 9(b).

20     A.     <u>SLUSA Preemption</u>

21     In order to close the loophole of state court filings of securities class actions under state statutory

22 or common law theories, "SLUSA mandated that federal court be the exclusive venue for class actions

23 alleging fraud in the sale of certain covered securities and that such class actions be governed exclusively

24 by federal law."  <u>Patenaude v. Equitable Life Assurance Soc'y of the United States</u>, 290 F.3d 1020,

25 1025 (9th Cir. 2002) (internal quotations omitted).  The statute provided:

26         No covered class action based upon the statutory or common law of any State or
          subdivision thereof may be maintained in any State or Federal court by any private party

27

28                                              14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

alleging--
(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). Plaintiffs argue that their claims arising under California law do not fall within the SLUSA's preemption because while both claims describe the sale of Enron bonds, plaintiffs' claims are also based on conduct that related to the management of their account and advice that caused plaintiffs to retain their Enron bonds during the class period. Pls' Opp'n at 21. Those aspects of their claims, plaintiffs argue, are not "in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1). Plaintiffs argue that similarly, their breach of fiduciary duty claim alleges that defendant pursued an investment course based on its own financial motives and internal incentives, and that such a claim does not require proof of misrepresentations, omissions, purchase, or sale.

To satisfy the "in connection with" element of section 78bb(f)(1), a party must show that a security buyer or seller suffered an injury as a result of "deceptive practices touching" its purchase or sale of securities. Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co., 404 U.S. 6, 12-13 (1971). The language "in connection with" is subject to the same liberal construction as under section 10(b): "It is enough that the scheme to defraud and the sale of securities coincide." SEC v. Zandford, 535 U.S. 813, 822 (2002). See also Feitelberg v. Merrill Lynch & Co., Inc., 234 F. Supp. 2d 1043, 1052 (N.D. Cal. 2002) (Patel, J.) (holding that an alleged scheme to misrepresent stock value in order to further the interests of a brokerage firm defendant was pre-empted by the SLUSA).

This court is at a loss to see how plaintiffs' complaint can be read not to concern a fraud scheme touching the sale of securities. The proposed class covers "all persons who *purchased* Enron corporate bonds from defendant" *during the class period.* Comp. ¶ 1. They have not defined a class of persons who held these bonds during the class period based on defendant's misrepresentations. Such a class definition would be unwieldy at best, it would lack many of the attributes of commonality required under Federal Rule of Civil Procedure 23, and it would make causation an even more evasive element to plead and prove. Though logic admits that some, even most, class members would have purchased and held

15

1    their bonds during the class period, the complaint does not allege anything pertaining to this decision.  The

2    complaint alleges *sales* presentations and fraudulent actions to "dump" the bonds into customers' hands,

3    including an incentive program to encourage Enron bond sales.  Id. ¶¶ 1-5; 17-22.  Nowhere does it

4    allege that defendant fraudulently managed customers' portfolios or otherwise influenced their retention of

5    Enron bonds.  The complaint contains only two references to holding Enron bonds, within the state law

6    fraud cause of action, that is unpinned to any factual allegations whatsoever.  Id. ¶¶ 26, 44 (alleging that

7    plaintiffs, "if they had known about the true facts concealed from them would not have purchased or held

8    on to the Enron bonds" and "plaintiffs continued to hold these bonds during the financial fraud described. .

9    ."). On the current facts alleged, even plaintiffs' breach of fiduciary duty claim—which at first glance

10   would seem a farther reach from SLUSA—is based on misrepresentations and failures to disclose

11   important information about a covered security in connection with a campaign to encourage plaintiffs'

12   purchase of that security.

13          As written, both of plaintiffs' state law claims are preempted by SLUSA.

14          B.       Compliance with Rule 9(b)

15          Even if plaintiffs' state claims were not pre-empted by federal securities law, the claims fail to

16   satisfy Federal Rule of Civil Procedure 9(b).  The rule provides that "[i]n all averments of fraud or

17   mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent,

18   knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. Pro. 9(b).

19   Fraud and concealment claims, including those in the securities context, are plainly accountable to the

20   heightened pleading standard of Rule 9(b).  Plaintiffs' breach of fiduciary duty claim is similarly

21   accountable, because it is based on defendant's fraudulent misrepresentations and omissions.  Courts

22   have distinguished between "fiduciary breach claims based upon the duty of loyalty, and those based upon

23   a breach of the duty of care, applying the requirements of Rule 9(b) only to the former."  See Fed. Sav.

24   and Loan Ins. Corp. v. Musacchio, 695 F. Supp. 1053, 1088 (N.D. Cal. 1988). See also Roskos v.

25   Shearson/American Exp., Inc., 589 F. Supp. 627, 631 (D.C. Wis. 1984) (reasoning the distinction

26   between breach of loyalty and breach of the duty of care in the context of a securities fraud claim);

27

28                                                    16

1    Washington v. Baenziger, 656 F.Supp. 1176, 1177 (N.D. Cal. 1987) (applying Rule 9(b) to a securities

2    class action stating a breach of fiduciary duty claim).

3         As discussed herein, plaintiffs have failed to plead the circumstances constituting fraud with

4    particularity: they have failed to plead the "neutral facts" such as the time, place, and content of each

5    alleged fraud or misrepresentation, they have failed to describe what was false and misleading about each

6    statement and why it was false or misleading, and they have failed to show that the statements were false

7    when made.  See Yoursh v. Cal. Amplifier, 191 F.3d 983, 993-94 (9th Cir. 1999).  Plaintiffs have failed

8    to allege the circumstances constituting fraud with particularity, and therefore all three causes of action in

9    the complaint fail to comply with Rule 9(b).

10

11   III.    Leave to Amend

12         Leave to amend should be freely granted unless amendment would be futile.  See Klamath-Lake

13   Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (futile

14   amendments should not be permitted); Silicon Graphics, 183 F.3d at 991 (denying leave to amend

15   because defects in the pleadings could not be cured by amendment).  In the present action, plaintiffs have

16   hastily filed  a private class action that is based on nothing more than a NASD disciplinary complaint.

17   While this court has no basis for finding that amendment will be futile at this time, plaintiff is forewarned

18   that, given the disregard of PSLRA standards by plaintiffs' experienced counsel, this court is unlikely to

19   entertain a carousel of multiple amendments.  In addition to meeting the PSLRA standards and carefully

20   pleading loss causation under the unusual circumstances of this case, plaintiffs should give careful

21   consideration to the causes of action upon which plaintiffs hang the facts alleged.

22

23

24

25

26

27

28

                                         17

1   CONCLUSION

2           For the foregoing reasons, defendants' motion to dismiss is GRANTED without prejudice.

3   If plaintiffs intend to file an amended complaint, they shall do so within thirty (30) days of the date of this

4   order and in compliance with this order.  Defendant shall file its answer or response as appropriate within

5   thirty (30) days of service of the amended complaint

6

7           IT IS SO ORDERED.

8

9   Dated: May 31, 2005

10                                                              MARILYN HALL PATEL
                                                                United States District Court Judge
11                                                              Northern District of California

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                  18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>ENDNOTES</u>

1. Unless otherwise noted, all facts herein have been taken from plaintiff's complaint.

2. Plaintiffs make pains to specify that their complaint does not allege that H&R Block was in possession of insider information about the health of Enron, but rather that it applied its own expert financial analysis to discern the dangers of Enron bonds.  Pls' Opp'n at 13.  The court accepts the distinction, but notes that it does not change the plaintiffs' burden pleading burden under the PSLRA for fraudulent statements or omissions and scienter.

3. The court recognizes, however, that these two positions may not be irreconcilable.  <u>See</u>, <u>e.g.</u>, <u>Kirkpatrick v. J.C. Bradford & Co.</u>, 827 F.2d 718, 724 (11th Cir. 1987) (holding that the presence of factual issues of individual reliance in connection with sale of securities did not render misrepresentation claims unsuitable for class treatment where "the claims essentially involve allegations that the defendants committed the same unlawful acts in the same method against the entire class") (internal quotations omitted).

4. Interpreting <u>Dura</u> to eclipse decades of flexible interpretation of securities liability would be a stretch indeed.  Section 10(b) is aimed at prohibiting all fraudulent schemes in connection with the purchase or sale of securities, whether the scheme is "garden type variety of fraud, or present a unique form of deception."  <u>Superintendent of Ins. of State of New York v. Bankers Life & Cas. Co.</u>, 404 U.S. 6, 11 n.7 (1971).