**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM M. BENNETT and MICHELE L. BOROVAC, Individually and on Behalf of All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>    v.<br><br>H&R BLOCK FINANCIAL ADVISORS, INC., and Does 1-10,<br><br>            Defendants. | No. C 04-4848 MHP<br><br>**MEMORANDUM AND ORDER**<br>**Re: Motion to Dismiss** |

      William Bennett and Michele Borovac have brought the present action on behalf of all persons who purchased Enron corporate bonds from defendant H&R Block Financial Advisors, Inc. ("H&R Block") from October 29, 2001 through November 27, 2001 (the "class period"). Plaintiffs allege that defendant violated federal securities laws by engaging in a fraudulent effort to solicit and sell $16 million of Enron bonds that were in fact worthless. The court previously granted defendants' motion to dismiss for failure to state a claim upon which relief can be granted, with leave to amend. Now before the court is defendant's motion to dismiss plaintiffs' First Amended Complaint. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules on the motion as follows.

BACKGROUND[1]

In the largest bankruptcy in United States history, the Enron Corporation filed for protection under Chapter 11 on December 2, 2001. The consequences of its collapse are well known: several criminal prosecutions, the demise of Enron's auditor Authur Andersen LLP, massive losses by investors, and a flurry of related securities litigation.

The present action concerns the one-month period immediately preceding Enron's bankruptcy filing. Plaintiffs allege, generally, that H&R Block fraudulently unloaded its holdings of Enron corporate bonds onto its brokerage clients in response to internal evaluations of Enron's emerging financial crisis. Plaintiffs specifically claim that H&R Block failed to disclose its internal concerns about Enron's financial stability to its clients, as manifested by H&R Block's internal communications about Enron and its decision to create a special incentive program for the sale of Enron bonds.

According to plaintiffs, defendant sold $16 million worth of Enron bonds (referred to as Bonds 1, 2, and 3) to more than 800 H&R Block customers during the class period. Defendant's internal evaluations, which were based on public information about Enron's burgeoning difficulties, concluded that these bonds were "worthless" due to Enron's "severe and deteriorating financial problems," yet the brokerage firm initiated a widespread sales program for the bonds in order to "dump" their Enron holdings. Defendant used a special commission structure that encouraged the sale of Enron bonds with unusually high sales credits for brokers. Plaintiffs identify one specific example of insider opinion on Enron securities: on October 23, 2001, defendant's Director of Research notified his representatives and branch managers that the equity Enron Capital Trust II had been removed from the approved list of products due to concern about the company's debt rating.

On November 8, 2004, the National Association of Securities Dealers ("NASD") issued a press release announcing that it was charging H&R Block with fraud in the sale of Enron bonds to more than 800 customers during the time frame defined herein as the class period. NASD estimated that H&R Block brokers recommended the sale of over $16 million worth of Enron bonds, and the agency is charging H&R Block with receiving profits of more than $500,000.

Just one week later, on November 15, 2004, plaintiffs filed their original complaint with the

2

law firm Cotchett, Pitre, Simon, & McCarthy as counsel. Their motion for appointment as lead plaintiff was unopposed, and this court granted them lead plaintiff status on March 1, 2005. The original complaint alleged violations of section 10(b) of the Securities and Exchange Act of 1934 and Rule 10(b)(5) promulgated thereunder, fraud and concealment under California common law, and breach of fiduciary duty under California common law. Defendant moved to dismiss the original complaint under Federal Rule of Civil Procedure 12(b)(6).

The court granted defendant's motion with respect to all of plaintiffs' claims. The court found plaintiffs' state law claims to be preempted and dismissed them with prejudice. With respect to plaintiffs' section 10(b) claim, the court found that plaintiffs failed to state a coherent theory of misrepresentation or omission and reliance, to plead scienter with sufficient particularity, and to state sufficient allegations of loss causation.

In response to the court's order, plaintiffs filed the First Amended Complaint which is the subject of the instant motion. The First Amended Complaint clarifies the nature of the alleged material omissions, adds detail to the allegations of scienter, and recasts the loss causation allegations in light of Dura Pharmaceuticals, Inc. v. Broudo, 125 S. Ct. 1627, 1631 (2005), which abrogated the Ninth Circuit standard for proving loss causation.

Defendant has once again moved to dismiss plaintiffs' complaint. Defendant argues that the alleged omissions, as clarified, are neither material nor misleading, that plaintiffs have still failed to meet the pleading burden for scienter, and that plaintiffs have again failed to allege loss causation.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "[o]rdinarily, a court may look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Under Rule 12(b)(6), "unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief," a motion to dismiss must be denied. Lewis v. Telephone Employees

3

Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) (citation omitted); see also Conley v. Gibson, 355 U.S. 41, 45–46 (1957).

DISCUSSION

To state a claim under section 10(b), plaintiffs must allege a material misrepresentation, scienter, a connection with the purchase or sale of a security, reliance, economic loss, and loss causation. Zelman v. JDS Uniphase Corp., 376 F. Supp. 2d 956, 964 (N.D. Cal. 2005) (Schwarzer, J.) (citing Dura Pharms., 125 S. Ct. at 1631). Plaintiffs' first complaint was deficient with respect to several of these elements; specifically, plaintiffs failed to state a coherent theory of misrepresentation and reliance, to plead scienter with sufficient particularity, and to allege loss causation. With respect to the last element, plaintiffs' original complaint was filed under the Ninth Circuit standard for loss causation that was abrogated by the Supreme Court in Dura Pharmaceuticals. The court first considers whether plaintiffs' amended complaint is sufficient under the new loss causation standard.

I.   Loss Causation

As this court has previously noted, the Supreme Court in Dura Pharmaceuticals endorsed the Second Circuit test for loss causation, as set forth in Lentell v. Merill Lynch & Co., 396 F.3d 161 (2d Cir. 2005) and Emergent Capital Investment Management, LLC v. Stonepath Group, Inc., 343 F.3d 189 (2d Cir. 2003). See Dura Pharms., 125 S. Ct. at 1633–34. Under the Second Circuit standard, plaintiffs must allege that the *subject* of the fraudulent statement or omission was the proximate cause of the actual loss suffered. Lentell, 396 F.3d at 173 (quoting Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 95 (2d Cir. 2001)). Stated differently, plaintiffs must allege both that the loss was foreseeable and that the loss was caused by the materialization of the concealed risk. Id.

In the First Amended Complaint, plaintiffs allege that defendant made four material omissions:

(1) that defendant was aware of and concerned about Enron's "financial problems, including the fact that the Securities and Exchange Commission was conducting an

4

investigation into Enron";

(2) that defendant was aware and concerned that Enron "had experienced a number of credit rating downgrades and that the bonds were on a negative credit watch for additional potential downgrades";

(3) that defendant had sent communications out via its intranet notifying brokers that the Enron Capital Trust II security was removed from defendant's list of approved securities because of defendant's concerns about Enron's financial stability; and

(4) that defendant paid its sales representatives an unusually large bonus for selling Enron securities.

FAC ¶ 4. These alleged omissions consist both of public information, which was available to the investing community as a whole, and private information available only to defendant. Specifically, the "financial problems" and "rating downgrades" that formed the basis of defendant's alleged concerns in omissions (1) and (2) were disclosed to the public in a number of press releases and articles which are identified in plaintiffs' complaint. FAC ¶¶ 60–70. Plaintiffs have made no allegations that defendant possessed insider information about Enron. The fact that defendant was "monitoring" or concerned about these events, however, was not public knowledge. Similarly, any belief defendant may have had about the financial viability of Enron, as reflected in alleged omissions (3) and (4), was not public knowledge.

With respect to the publicly available information, plaintiffs have not alleged and cannot plausibly allege that the press releases cited in the complaint caused the later drop in value of the Enron bonds. The "truth" contained in those press releases had already "[made] its way into the market place" and affected the market price of the bonds; plaintiffs have not alleged that they purchased the bonds at a price different from their market value on the date of the sale. See Dura Pharms., 125 S. Ct. at 1632. Instead, plaintiffs attempt to link the already public information about Enron's financial instability to plaintiffs' loss in two ways. First, plaintiffs argue that the fall in bond value was caused by the same general phenomenon—Enron's financial instability—that was the subject of the press releases and articles. FAC ¶ 100. It is not adequate, however, to allege that the subject of defendant's omission has some connection to the loss in value; "[t]o 'touch upon' a loss is

5

not to *cause* a loss, and it is the latter that the law requires." Dura Pharms.; 125 S. Ct. at 1632. Here, the specific pieces of information that defendant possessed with respect to Enron's financial instability were already known to the market and incorporated into the bonds' prices; their disclosure did not cause the later drop in value. Plaintiffs' repeated assertion that the drop in value was within the "zone of risk" of Enron's financial instability is not a substitute for arguing causation in fact, but rather relates to the additional requirement that the loss be foreseeable.

Second, plaintiffs argue that defendant's clients, who are generally unsophisticated investors, were unaware of Enron's financial difficulties notwithstanding any public disclosures. This argument conflates loss causation, which requires a connection between the omission and the drop in price, with "transaction causation" or reliance, which requires a connection between the omission and plaintiffs' decision to purchase the bonds. The sophistication of plaintiffs is not relevant to loss causation.

Turning to the portions of the omissions that were not public knowledge—all of which relate to defendant's knowledge of and beliefs regarding Enron's financial condition—plaintiffs have not alleged and cannot plausibly allege that the revelation of defendant's opinions affected the value of the Enron bonds. Nor have plaintiffs alleged that defendant's clients make up such a large fraction of total investors in Enron bonds that their subsequent sale of the bonds caused the bonds' value to decrease. Absent any alleged connection between defendant's opinions and the drop in market value, plaintiffs have not alleged loss causation.

In order to meet the requirements set forth in Dura Pharmaceuticals, plaintiffs would have to allege that defendant had in its possession information that, once it became generally known, caused the bonds' value to depreciate. Id. at 1633 (citing Restatement (Second) of Torts § 548A, cmt. b, at 107). Plaintiff has failed in two successive attempts to allege that defendant possessed material nonpublic information about Enron's financial condition or that the release of defendant's opinions precipitated the bonds' drop in value. Absent some indication that plaintiffs will be able to supplement the complaint with such an allegation in the future, dismissal with prejudice is appropriate.

## II. Other Alleged Defects in the First Amended Complaint

Defendant raises a host of other objections to plaintiffs' newly formulated claims. First, defendant argues that the first two alleged omissions cannot be "materially misleading" because the existence of the SEC investigation and Enron's debt ratings were already publicly known. Second, defendant argues that the third and fourth alleged omissions pertain to defendant's opinion of Enron, which defendant was under no duty to disclose. Third, defendant complains that plaintiffs have not provided any particularized basis for their knowledge of defendant's internal evaluations of Enron's financial health or of defendant's incentive structure for sales of Enron securities, as required by federal securities law. Fourth, defendant argues that plaintiffs have not supplemented their allegations of scienter in any meaningful way.

Although these arguments may have merit, plaintiffs' inability to allege loss causation is fatal to their claim under section 10(b) and the court need not consider them.

Finally, at oral argument plaintiffs objected that the court's finding with respect to loss causation leaves brokerages free to trick their clients into making risky investments, so long as the brokerages are not in possession of material nonpublic information. The court is certainly not pleased by defendant's apparent disregard for the financial well being of its clients. Although plaintiffs may lack a meaningful remedy under federal securities law, the court has not reached the merits of any of plaintiffs' state law claims, which are preempted in the class action setting. These claims—pursued as an individual, rather than as part of a class action—may have merit, which plaintiffs are free to explore in an appropriate forum.

CONCLUSION

For the above reasons the court hereby GRANTS defendant's motion to dismiss plaintiffs' First Amended Complaint with prejudice, except to the extent that plaintiffs' claims encompass individual allegations of violations of California law; these individual claims are dismissed without prejudice. The clerk shall close the file.

IT IS SO ORDERED.

Date: October 26, 2005

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

ENDNOTES

1. Unless otherwise noted, background facts are taken from plaintiffs' First Amended Complaint.